Hon. Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NEIDINGER, KRISTINE M., | ) NO. C10-5702-RBL |
| Plaintiff, | ) PLAINTIFF'S RESPONSE TO DEFENDANTS' |
| | ) MOTION FOR SUMMARY JUDGMENT |
| v. | ) |
| | ) Motion Noted for Consideration: June 15, 2012 |
| COUNTY OF PIERCE, et al., | ) |
| Defendants. | ) |

## I.  MOTION

Plaintiff Kristine M. Neidinger, by and through counsel, moves this Court deny Defendants' Motion for Summary Judgment. Plaintiff also separately has filed a Motion to Amend Complaint (dkt. 35) and Motion to Exclude Testimony (dkt. 38) in response to Defendant's Motion for Summary Judgment that resolves some of the issues contained therein.

## II.  FACTS

On the afternoon of April 9, 2008, Ms. Neidinger was arrested by the Tacoma Police Department for misdemeanor malicious mischief and brought to the Pierce County jail for booking. Def.'s Responses to Pl.'s 1st Discovery Req. to Def. Pierce County, Bates 53. Note: the record does not include any indication a judicial determination of probable cause as to the crime of arrest was ever made. At booking, Ms. Neidinger refused to take out her navel ring out of concern "it would bleed, and [she] didn't want to catch a staph infection." Neidinger Dep. at

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

36:2-11. After Ms. Neidinger was dressed out, she was then placed into a "single-occupancy" "very small cell." Neidinger Dep. at 37:15-16; Earp Dep. at 13:2-24, 14:9:10. Ms. Neidinger was not handcuffed when she was placed in the small cell. Neidinger Dep. at 42:13-14. After Ms. Neidinger was placed into the small cell, the "heavy...solid" door was closed and locked behind her. Neidinger Dep. at 42:15-17, 44:23-25; Earp Dep. 14:21-24.

After Ms. Neidinger was placed in the small cell, she became upset because her "stomach was starting to get irritated from being all stressed out" and she "hadn't had [her] medicine for well over 24 hours." Neidinger Dep. at 43:6-25. As a result, Ms. Neidinger "banged on the door with [her] hand and asked [the jail staff] to please bring" her medicine, including her "ulcer medication and [her] Zoloft to calm [her] down." Neidinger Dep. at 44:1-8. Approximately 35 minutes after Ms. Neidinger had been placed in the cell, Defendant Sgt. Malidore "told [Ms. Neidinger] to stop banging and walked away." Neidinger Dep. at 47:7-8, Earp Dep. at 21:12-20. Ms. Neidinger continued, "off and on," to bang on the door and yell "please bring me my medicine." Neidinger Dep. at 47:13-22. Later, Sgt. Malidore told Ms. Neidinger through the window in the small cell door "they would keep me in there as long as they wanted to." Neidinger Dep. at 49:2-5; Malidore Dep. at 15:18-22. In response, Ms. Neidinger "dropped her pants, exposed her behind, her buttocks." Malidore Dep. at 15:18-22. Sgt. Malidore responded "[s]on of a bitch. She BA'd me." Neidinger Dep. at 49:12-15. A couple minutes later, Sgt. Malidore came to the door again and "told [Ms. Neidinger] to stop banging" and "if [she] didn't stop that he would come in" and "utilize [his] taser" and he displayed his TASER. Neidinger Dep. at 51:10-18; Malidore Dep. 17:14-20.

After Sgt. Malidore displayed his TASER, Ms. Neidinger stopped banging on the door. Neidinger Dep. at 51:19-20. Nevertheless, Sgt. Malidore directed Defendant Ofc. Earp to open

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 2 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

the door. Malidore Dep. at 17:22-18:7; Earp Dep. at 25:3-6. Sgt. Malidore, Ofc. Earp, Defendant Ofc. Williams, and Defendant Ofc. MacArthur then prepared to enter the cell. Earp Dep. at 25:8-12. Specifically, Sgt. Malidore "prepared [his] taser for use by removing the cartridge" with the intent of using the TASER with "a contact application." Malidore Dep. at 18:15-21. Also, prior to opening the door, Sgt. Malidore told Ms. Neidinger "to step back away from the door." Neidinger Dep. p. 51:21-23. Ms. Neidinger complied. Neidinger Dep. at 51:24-25. After the door was open, Sgt. Malidore told Ms. Neidinger "to step back more." Neidinger Dep. at 52:1-3. Ms. Neidinger complied. Neidinger Dep. at 52:4-5.

Nevertheless, Sgt. Malidore, without verbal warning, entered the cell and deployed his TASER on Ms. Neidinger's chest. Neidinger Dep. at 52:6-10, Malidore Dep. at 19:10-13. Sgt. Malidore "grabbed" Ms. Neidinger, "started to turn [her] around toward the wall, and he tased [her] on the back shoulder." Neidinger Dep. at 52:24-53:1. While using the TASER on both Ms. Neidinger's chest and back shoulder, the TASER came off and was reapplied. Neidinger Dep. at 54:14-16; Malidore Dep. at 21:1-3, 23:11-24:15. After using the TASER on Ms. Neidinger's back shoulder, Sgt. Malidore "pushed her to the floor and she basically went down onto the floor face, belly first." Malidore Dep. at 24:16-19. Sgt. Malidore "used the weight of the taser and [his] pressure holding it on her to hold her down as officers moved in." Malidore Dep. at 24:22-24. With the application of the TASER, Ms. Neidinger experienced "convulsions," a "shock, the energy going through [her] body, and [her] heart starting to really skip beats," a "burning sensation of being burnt." Neidinger Dep. at 55:5-14.

After Ms. Neidinger was on the floor of the cell, Ofc. Williams placed leg restrains on Ms. Neidinger. Neidinger Dep. at 56:21; Decl. of Williams, dkt. 31, ¶ 7. After Ms. Neidinger was on the floor, Ofc. Earp grabbed Ms. Neidinger's arm to place arm restraints on her. Earp

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 3 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

Dep. at 27:13-28:3; Malidore Dep. 25:16-17. After Ms. Neidinger was on the floor, Ofc. MacArthur participated in the "dog pile...tak[ing] an arm or leg or something to accomplish the goal of applying the restraints." Earp Dep. at 27:20-23.

After Ms. Neidinger was in arm and leg restraints, Sgt. Malidore "reached his left hand and grabbed [her] around the throat and started choking [her]," "slammed [the taser] on [her] throat," "pulled out some of [her] hair," and "hit" her. Neidinger Dep. at 57:10-24. As a result, Ms. Neidinger had a near death experience. Neidinger Dep. at 57:25-59:24. After regaining consciousness, Ms. Neidiner felt "an extremely overwhelming amount of pain," and "was all covered in vomit and pee." Neidinger Dep. at 59:20-60:3. For more than two hours, Ms. Neidinger remained in restraints in the cell, during which time the vomit and urine were not cleaned up. Malidore Dep. 28:5-7; Neidinger Dep. at 62:16-23.

As a result of the actions of Sgt. Malidore, Ofc. Earp, Ofc. Williams, and Ofc. MacArthur, Ms. Neidinger suffered physical injuries, including "scratches, bruises, cuts, [and] taser burns," her "face was swollen from hitting the floor," "was vomiting blood off and on," "had a hard time breathing," and she had "really, really bad pain...all over," especially in her "arm and [her] shoulder." Neidinger Dep. at 69:10-23, 70:18-22, 74:17-22; Def.'s Responses to Pl.'s 1st Discovery Req. to Def. Pierce County, Bates 2-3.

### III. ARGUMENT

A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record...or (B) showing the materials cited do

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT MOTION – Page 4 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(b). "The party moving for summary judgment has the burden of clearly establishing the lack of a triable issue of fact." *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). "Furthermore, the trial court should resolve all reasonable doubts touching on the existence of a genuine issue as to a material fact against the moving party." *Id.* That is, "all inferences of fact [are drawn] in favor of the party opposing the motion." *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 138 (9th Cir. 1981).

B. 1983 ELEMENTS

"Every person who, under color of any [law] of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Jones v. Williams*, 286 F.3d 1159, 1162-1163 (9th Cir. 2002). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-394 (1989) (internal quotations omitted). And so the "first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which the defendant[s are] charged. *Id.* at 394 (internal quotations omitted).

C. EXCESSIVE FORCE, 4TH AMENDMENT

The Amended Complaint in this action does identify several constitutionally-protected rights: "(1) the right to be free from unreasonable and excessive force under the Fourth and Fourteenth Amendments, (2) the right to be free from cruel and unusual punishment under the

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 5 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

Fifth, Eighth, and Fourteenth Amendments, and (3) the right to due process of law under the Fifth and Fourteenth Amendments." Dkt. 17, ¶ 5.2. However, after consideration, the only Constitutional right at issue in this action is the right to be free from unreasonable and excessive force under the Fourth and Fourteenth Amendments.

"The right of the people to be secure in their persons...against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The "Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon [a judicial finding of] probable cause for arrest." *Pierce v. Multnomah County, Oregon*, 76 F.3d 1032, 1043 (9th Cir. 1996). "Determining whether the force used to effect [or maintain] a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations omitted). The "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

D. SUMMARY JUDGMENT STANDARD IN EXCESSIVE FORCE CONTEXT

"Determining whether a particular use of force is reasonable requires a fact-finder to balance 'the nature and quality of the intrusion into the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Boyd v. Benton County*, 374 F.3d 773, 778-779 (9th Cir. 2004). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to drawn inferences therefrom...summary

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 6 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

judgment...in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (internal citations omitted).

E. *GRAHAM* FACTORS

"Assessing the nature and quality of a given intrusion requires the fact finder to evaluate the type and amount of the force inflicted." *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1198 (9th Cir. 2000) (internal quotations omitted). "Weighing the governmental interests involved requires the fact finder to evaluate factors such as (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, (3) whether he was actively resisting arrest or attempting to evade arrest by flight, and [(4)] any other exigent circumstances that existed at the time of the arrest." *Id.* at 1198-1199 (internal quotations omitted). "[T]he essence of the *Graham* objective reasonableness analysis is that the force applied must be balanced against the need for the force." *Id.* at 1199 (internal quotations omitted). "Thus, where there is no need for force, any force is constitutionally unreasonable." *Id.*

1. GOVERNMENTAL INTEREST

**Severity of the crime.** A crime's severity in the excessive force context often turns on whether the crime involves violence. *Chew v. Gates*, 27 F.3d 1432, 1442 (9th Cir. 1994). "Although the commission of a misdemeanor offense is not to be taken lightly, it militates against a finding the force used to the effect an arrest is reasonable where the suspect was also nonviolent and posed no threat to the safety of the officers or others." *Headwaters*, 240 F.3d at 1204 (finding trespass not a severe crime); *see also Logan v. City of Pullman*, 392.F.Supp.2d 1246, 1262 (E.D. Wash. 2005) (finding "character of offense was minor" where "Defendant Officers were

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 7 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

called to the scene to break up a [bar] fight"); *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (holding crimes of "disorderly conduct and obstruction" to be "of minor severity").

Here, Ms. Neidinger was arrested for misdemeanor malicious mischief. Def.'s Responses to Pl.'s 1st Discovery Req. to Def. Pierce County, Bates 53. Malicious mischief is considered a nonviolent offense. RCW 9.94.030(33), (54). Although malicious mischief may be considered "domestic violence," as it was here, the term "domestic violence" is itself misleading, and its use in no way implies "violence" has been committed. *See* RCW 10.99.020 ("domestic violence" label applied to crimes solely because the crime was "committed by one family or household member against another"). Therefore, the misdemeanor nonviolent crime for which Ms. Neidinger was arrested was not severe, which tends to support a conclusion the governmental interest at issue is minimal.

**Immediate threat to safety of officers or others.** The "most important single element of the three specified [*Graham*] factors: whether the suspect poses an immediate threat to the safety of the officers or others." *Chew*, 27 F.3d at 1441.

An individual "unarmed and in his pajamas" "did not pose an immediate threat," "notwithstanding the fact that, prior to being handcuffed, he disregarded the officers' orders, refused to put up his hands, and was shouting expletives." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007).

In the context of a jail, an "unarmed and naked" individual "in a holding cell" who "began scooping water from the toilet in his cell and rubbing it on his body," and who, after being "ordered...out of his cell...refused to leave" and "hid behind his toilet" when corrections officers "stormed [the] cell" did not present an immediate threat to the safety of officers or others. *Cabral v. County of Glenn*, 624 F.Supp.2d 1184, 1189, 1191 (E.D. Cal. 2009). Also, an

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 8 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

individual who, "after he had been in a holding cell with approximately a dozen other men for about four hours...became 'panicked' and 'fearful'...[and] told a deputy...'I'm diabetic and feeling very sick and I was long overdue on food and they told me some food was coming" did not present an immediate threat to the safety of officers or others. *Lolli v. County of Orange*, 351 F.3d 410, 416-417 (9th Cir. 2003). Moreover, an individual who "refused to get out of the patrol car" when he arrived at the jail, had previously been "physically combative" with the arresting officers, was "placed...alone, in a holding cell," did not present an immediate threat to the safety of officers or others *until* "he slipped out of his waist chain and began banging it against the window" because of a concern, with the chain, he "might shatter the window in his cell door." *Gibson v. County of Washoe*, 290 F.3d 1175, 1182, 1198.

Here, Ms. Neidinger was located in a single-occupancy holding cell with a heavy, solid door that had been locked, had been dressed out (i.e. had no personal effects, such as weapons, on her person), was not in handcuffs. Neidinger Dep. at 37:15-16, 42:13-17, 44:23-25; Earp Dep. at 13:2-24, 14:9:10, 21-24. Like the detainee in *Gibson* before he slipped out of his waist chain, Ms. Neidinger "posed no immediate danger to anyone but," at most, herself. *Gibson*, 290 F.3d at 1198. Indeed, Ms. Neidinger if anything posed even less of a risk than the detainee in *Gibson*, having never previously been physically combative. In any event, a person locked in a locked, single-occupancy cell without any manner of getting out of that cell cannot pose an immediate threat to the safety of officers or others. *See* Burwell Dep., Ex. 2, p. 4. Therefore, because there was no immediate threat to the safety of officers or others, the government interest at issue is minimal.

Defendants, by mentioning the so-called "contagion effect," may try to argue to the contrary. Defs.' Mot. for Sum. Judg., dkt. 28, p. 2.

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT MOTION – Page 9 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

Plaintiff has filed a Motion to Exclude Testimony regarding the "contagion effect" in this action. Dkt. XXX. And certainly to the extent the Court grants that motion, no legitimate government interest can be found in preventing the "contagion effect." But regardless of the Court's ruling on the Motion to Exclude, the existence and applicability of the "contagion effect" is a disputed issue of material fact that would preclude summary judgment. *See* Burwell Dep. 84:6-86:4 (Pl.'s expert witness finding "contagion effect" inapplicable on facts presented here).

**Actively resisting or attempting to evade.** The third *Graham* factor is whether the individual actively resisted arrest or attempted to evade arrest by flight. *Smith*, 394 F.3d at 703. Although this factor has been little analyzed in the jail context, the factor must be analogized to refer to actively resisting or attempting to evade *continued detention*.

As noted above, Ms. Neidinger was locked in a single-occupancy holding cell with a solid door, without any weapons or any means of escape. Thus, Ms. Neidinger could not have been actively resisting or attempting to evade her continued detention. Therefore, the third *Graham* factor tends to establish the governmental interest here is minimal.

**Immediate threat to safety of detainee.** "[I]n assessing the governmental interests at stake under *Graham*, [the court is] free to consider issues outside the three enumerated [factors] when additional facts are necessary to account for the totality of the circumstances in a given case." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). The government has a legitimate interest in preventing an individual from harming himself. *See Byran v. McPherson*, 590 F.3d 767, 778 (9th Cir. 2009).

Of course, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 10 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Thus, in assessing how significant the government's interest in preventing an individual from harming himself is in a particular situation, the fact-finder must examine the facts and circumstances confronting the officer objectively, without regard for the individual officer's subjective belief about the likelihood and severity of the self-harm to be avoided.

Here, although Sgt. Malidore's "decision...to enter [Ms. Neidinger's] cell and place her in restraints" was subjectively intended, in part, "to stop her from injuring herself," the facts and circumstances here indicate the risk of Ms. Neidinger injuring herself was scant.

Specifically, although Ms. Neidinger was intermittently banging on the cell door, there was no indication she wished to hurt herself. Neidinger Dep. at 47:14-17; *see also* Def.'s Responses to Pl.'s 1st Discovery Req. to Def. Pierce County, Bates 53 (no "suicide history or tendencies"); Burwell Dep. Ex. 2, p. 7 ("If Inmate Neidinger was a danger to herself, it would have been documented through detailed report writing, the video capturing her behavior, and reports from medical personnel on scene."). Moreover, although Ms. Neidinger was banging on the door with her hands, she did not report any injury to her hands. Neidinger Dep. at 45:5-7, 69:10-23.

Moreover, Ofc. Earp indicated the "standard response" to an inmate "banging on the door" "in a booking cell" is "[j]ust to check, to check on their welfare." Earp Dep. at 44:21-45:10. Ofc. Earp indicated if the banging does not result in "blood, broken bones, scrapes, [or] an area that appears red from the banging," she would ordinarily "[j]ust wait for them to calm down." Earp Dep. at 45:11-13. In other words, a reasonable officer may infer from a lack of

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 11 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

apparent injury that repeated banging, although annoying, does not present a risk of imminent self-harm. *See also* Burwell Dep. at 43:13-45:8.

Finally, Ms. Neidinger *did* stop banging *before* Sgt. Malidore, Ofc. Earp, Ofc. Williams, and Ofc. MacArthur entered the cell. Neidinger Dep. at 51:19-20. In other words, to the extent there existed a legitimate interest in preventing Ms. Neidinger from harming herself, that interest dissipated as soon as Ms. Neidinger stopped banging. Therefore, the government interest in preventing Ms. Neidinger from hurting herself when the force was applied was minimal at best.

2. NATURE AND QUALITY OF THE INTRUSION

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.

"The respiratory neck restraint involves compression of the trachea" and "is a dangerous an potentially lethal subject control technique" and "should be considered deadly force." *Griffith v. Coburn*, 408 F.Supp.2d 491, 498 (W.D. Mich. 2005). Even the "lateral vascular neck restraint [which] involves compression of the outside of the neck instead of the trachea," which is considered nondeadly force, is "on the higher end of the scale of resistance." *Id.* That is, any choke hold, no matter how conducted, is at least an intermediate use of force. *See* Pl.'s 1st Discovery Req. to Def. Pierce County, Bates 25-26.

Also the "Taser stun [is] a serious intrusion into the core of the interests protected by the Fourth Amendment." *Mattos*, 590 F.3d at 1087; *see also Brooks v. City of Seattle*, 599 F.3d 1018, 1028 (use of TASER in drive-stun mode a "serious intrusion," although "less than

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 12 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

intermediate"); *but see* Burwell Dep. 26:7-27:18 (drive stun worse than dart mode). Furthermore, even the relatively minimal force in play when restraints are applied may be "constitutionally unreasonable" if "there is no need for [any] force." *Headwaters Forest Defense*, 240 F.3d at 1199.

Here, because Ms. Neidinger was repeatedly tased, forced into restraints, and choked into unconsciousness, the totality of the circumstances demonstrate a significant intrusion into her Fourth Amendment interests.

### 3. BALANCING

Because the force used by Sgt. Malidore, Ofc. Earp, Ofc. MacArthur, and Ofc. Williams was significant, and the government interests served by that use of force were minimal at best, the force used by Sgt. Malidore, Ofc. Earp, Ofc. MacArthur, and Ofc. Williams was excessive and unreasonable. Therefore, Sgt. Malidore, Ofc. Earp, Ofc. MacArthur, and Ofc. Williams deprived Ms. Neidinger of her Fourth Amendment rights.

## F. INTEGRAL PARTICIPATION

"A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007). As such, an officer is not liable simply "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). However, an officer is liable if he is an integral participant in the constitutional violation." *Id.* "'Integral participation' does not require that each

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT
MOTION – Page 13 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).

The *Boyd* court considered the use of a "flash-bang" device to execute a search warrant. *Id.* at 777. The *Boyd* court considered "each officer involved in the search operation [to be] an 'integral participant'" because each officer "stood armed behind" the officer who actually threw the flash-bang;" "the use of the flash-bang was part of the search operation in which every officer participated in some meaningful way," and "every officer was aware of the decision to use the flash-bang and did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id.* at 780.

Here, Sgt. Malidore, Ofc. Earp, Ofc. MacArthur, and Ofc. Williams each entered Ms. Neidinger's cell and physically assisted in restraining her. Decl. of Williams, dkt. 31, ¶ 7; Earp Dep. at 27:13-28:3; Malidore Dep. 25:16-17; Decl. of Malidore, dkt. 29, ¶¶ 6-9. Sgt. Malidore's use of the TASER, if not the choke hold, was part of the restraint operation. Decl. of Malidore, dkt. 29, ¶ 9. Sgt. Malidore, Ofc. Earp, Ofc. MacArthur, and Ofc. Williams were aware the TASER would be used as part of the restraint operation, and nevertheless participated. Decl. of Malidore, dkt. 29, ¶¶ 6-9; Decl. of Williams, dkt. 31, ¶¶ 6-7; Earp Dep. at 25:3-19. Therefore, Sgt. Malidore, Ofc. Earp, Ofc. MacArthur, and Ofc. Williams were integral participants in the act of restraining Ms. Neidinger, and should be held liable for the constitutionally impermissible force as described above.

G. QUAILFIED IMMUNITY

"The doctrine of qualified immunity protects government officials from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*,

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT MOTION – Page 14 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

129 S.Ct. 808, 815 (2009). The two prongs of the qualified immunity analysis are (1) "whether the facts...make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 815-816.

"The determination of whether a right was clearly established requires an objective but fact-specific inquiry." *Cabral*, 624 F.Supp.2d at 1192 (internal quotations omitted). "The critical question is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Id*. "As of September 2005...police officers had reasonable notice that they may not use a Taser against an individual suspect who does not pose a threat and has merely failed to comply with commands." *Id.* (citing *Kaady v. City of Sandy*, 2008 WL 5111101, *21 (D. Or. 2008)).

Moreover, "a victim's constitutional rights may be clearly established in the absence of a case on all fours prohibiting the particular manifestation of unconstituional conduct at issue." *Boyd*, 374 F.3d at 781 (internal citations omitted). "In particular, qualified immunity is not appropriate merely because no cases directly address the use of a new weapon or a novel method is used to inflict injury." *Id.* (internal citations omitted). "Rather, when an officer's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Id.* (internal citations omitted). "In excessive force cases, the inquiry remains whether, under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and whether any mistake to the contrary would have been unreasonable." *Id.* (internal citations omitted).

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT MOTION – Page 15 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

Here, because the government interests were minimal at best, very little, if any, force would be justified. Because significant force—especially the repeated use of the TASER and the choke hold—was applied, any reasonable officer would have had fair notice the force was excessive and unconstitutional.

## IV. CONCLUSION

There are material facts in dispute as to what quantum of force was applied to Plaintiff Neidinger by Defendants Malidore, Earp, MacArthur, and Williams, as well as what legitimate government interests, if any, were served by that use of force. Therefore, summary judgment is inappropriate, and Defendants' Motion for Summary Judgment should be denied.

DATED this 10th day of June, 2012.

    /s/ Christopher Taylor
Christopher Taylor
Attorney for Plaintiff
Washington State Bar Association # 38413
email: taylor@ftlawps.com

## CERTIFICATE OF SERVICE

I certify that on June 11, 2011, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, with attachments, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Michelle Luna-Green, Attorney for Defendants: mluna@co.pierce.wa.us

    /s/ Christopher Taylor
Christopher Taylor

PL'S RESPONSE TO DEFS' SUMMARY JUDGMENT MOTION – Page 16 of 16

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006