IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NEIDINGER, KRISTINE M., | ) NO. C10-5702-RBL |
| | ) |
| Plaintiff, | ) MOTION TO EXCLUDE TESTIMONY |
| | ) |
| v. | ) Note for Motion Calendar: July 6, 2012 |
| | ) |
| COUNTY OF PIERCE, et al., | ) |
| | ) |
| Defendants. | ) |

I.  MOTION

Plaintiff, through counsel, moves this court to exclude the testimony of defense expert Tom Burns regarding the subject of the "contagion effect" pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

II.  FACTS

On July 27, 2011, Defendants identified Tom Burns of CRT Less Lethal, Inc. as an expert they anticipate calling at trial. Ex. A, p. 2. With that disclosure, Defendants provided Mr. Burns' "report and qualifications." Ex. B. Mr. Burns' report, dated July 22, 2011, contains, *inter alia*, a discussion of what he described as the "contagion effect." Ex. B, p. 9. Specifically, Mr. Burns described the so-called "contagion effect" as follows:

> Contagion effect is a common occurrence in detention facilities and as such must be addressed quickly and limit further possible disturbances. Contagion effect is where one person's behavior

MOTION TO EXCLUDE TESTIMONY – Page 1 of 7

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

incites similar behavior from others around them that would not normally act out in such a manner. We observe this in crowd control situations ranging from full blown riots such as those observed in the WTO riots in Seattle to the most recent sports riots in Vancouver, BC. In law enforcement and in correctional settings contagion effect can be at levels from a bar fight getting out of control to a full blown riot in a correctional lunch room. Addresses Neidinger's potential threat I have observed uncooperative and physical confrontational prisoners in a booking setting cause other prisoners to also mimic the behavior that they observe if not addressed in a timely and efficient manner. Neidinger's actions even within a holding cell constitute an immediate threat to the entire booking area if not dealt with. Neidinger's complaint states that she yelled, banged on the door and at one point pulled down her pants exposing herself. This is a direct challenge to the staff and their ability to control their prisoners and the environment as a whole. If not dealt with the possibility to insight others in detention in this immediate area is high and for the safety of all parties involved whether directly or indirectly is placed on the corrections officers abilities to quickly and efficiently to deal with the negative and destructive behavior.

Ex. B, pp. 9-10. Moreover, Defendants' Motion for Summary Judgment again relies, in part, upon the anticipated testimony of Mr. Burns, including the "contagion effect." *See* Def. Mot. Sum. Judg., dkt. 28, p. 2. Indeed, Defendants separately filed Mr. Burns' report, quoted above. Decl. of Burns, Ex. A, dkt. 32.

### III. ARGUMENT

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." *Mukhtar v. Cal*.

MOTION TO EXCLUDE TESTIMONY – Page 2 of 7

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

*State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (citing *Daubert* , 509 U.S. at 589). "The trial court must act as a 'gatekeeper' to exclude 'junk science' that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-148 (1999)).

"The importance of *Daubert*'s gatekeeping requirement cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "The objective of that requirement is to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co.*, 526 U.S. at 152. "it is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* The trial court's role is especially significant because the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. "Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts of the case, and based upon otherwise inadmissible hearsay if the facts or data are of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject." *Frazier*, 387 F.3d at 1260.

"*Daubert* provided a non-exhaustive list of factors for determining whether expert testimony is sufficiently reliable to be admitted into evidence, including (1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Mukhtar*, 299 F.3d at 1064. "Sometimes the specific *Daubert* factors

MOTION TO EXCLUDE TESTIMONY – Page 3 of 7

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262.

Although a trial court has "broad latitude in determining whether an expert's testimony is reliable [and] also in deciding *how* to determine the testimony's reliability...the trial court's broad latitude to make the reliability determination does *not* include the discretion to abdicate completely its responsibility to do so." *Id.* Moreover, "[t]he proponent of the expert testimony always bears the burden to show that his expert is qualified to testify competently regarding the matters he intended to address; the methodology by which the expert reached his conclusions is sufficiently reliable; and the testimony assists the trier of fact." *Frazier*, 387 F.3d at 1260.

Here, Thomas Burns, identified as a defense expert, described the "contagion effect" as "one person's behavior incit[ing] similar behavior from others around [him] that would not normally act out in such a manner." Mr. Burns opines the "contagion effect" is "a common occurrence in detention facilities."

However, Mr. Burns does not describe whether the "contagion effect" has been tested, or is capable of being tested.  Specifically, Mr. Burns does not identify controlled studies that indicated how frequently this effect has been observed, how the effect manifested itself (i.e. what constituted "similar behavior"? did all behaviors—including, e.g., teeth brushing, snoring, and smiling—trigger the "contagion effect"? did addressing the behavior "quickly" reduce the effect?), and how other causes were ruled out (i.e. why it was concluded the abnormal behavior of the "others" was "incited" by the behavior of the one). Nor does Mr. Burns point to any statistical analysis of data gathered from detention facilities or otherwise. Neither does Mr. Burns indicate a method by which such a study or analysis could be conducted.

MOTION TO EXCLUDE TESTIMONY – Page 4 of 7

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

Furthermore Mr. Burns does not indicate whether the "contagion effect" has been subjected to peer review or publication. The "materials reviewed" section of Mr. Burns' report fails to identify any scientific or technical journals in which the "contagion effect" was identified or discussed.

Moreover, Mr. Burns does not indicate whether there is a known or potential error rate. For example, Mr. Burns not only fails to identify how frequently the "contagion effect" is observed—i.e. what constitutes a "common occurrence"—he also neglects to indicate how often the behavior of one person is *ignored* by the others around him, how often the behavior of one person is *positively affects* the others around him (i.e. the bad behavior of one person, left unaddressed, actually causes the others in the vicinity to avoid similar behavior with a higher rate than otherwise), and how often intervening action (e.g. by corrections officers) measurably reduces the incidence of bad behavior of others.

Finally, Mr. Burns does not indicate whether the "contagion effect" is recognized within the relevant scientific or technical community. Specifically, Mr. Burns does not indicate, for example, that the "contagion effect" is recognized in the field of crowd psychology, social psychology, or otherwise.

A comparison to the facts in *Frazier* is instructive. There, Robert Tressel, "a forensic investigator and former police officer" was identified as a possible expert by the defense to testify in a criminal trial involving a sexual assault allegation the defendant Richard Frazier. *Frazier*, 387 F.3d at 1252. Tressel was expected to testify "[w]ith the amount of sexual activity described...it would expected that some transfer of either hairs or seminal fluid would occur in this case," and "there is no forensic evidence to substantiate the claim of rape in this case." *Id.* During the *Daubert* hearing, Tressel testified his opinion that some transfer of hair or semen

MOTION TO EXCLUDE TESTIMONY – Page 5 of 7

"would be expected" was based upon "a single investigation he had worked on, in which hair evidence was recovered during the investigation of a serial rapist" and a "text entitled *Practical Aspects of Rape Investigations*," admitted " 'I don't think anybody has ever studied the rates of transfer' of hair evidence, and clarified he was not familiar with *any* scientific literature on the rate of transfer of hair in sexual assault cases." *Id*. at 1253.

Although Tressel was permitted to testify about certain matters, he was not "permitted to opine that, based upon the sexual activities described by the victim, *it would be expected* that some transfer of either hairs or seminal fluid would occur." *Id.* at 1254. The Court of Appeals, affirming this ruling, noted "[t]he reliability of Tressel's opinion that the recovery of inculpatory hair or seminal fluid 'would be expected' is undermined in two ways. *Id.* at 1264. "First, the very meaning of the basic opinion is uncertain," i.e. whether "expect" meant "more likely than not," "virtual certainty," or something in between. *Id.* at 1265. Second, and "[m]ore fundamentally," "Tressel offered precious little in the way of a reliable foundation or basis for his opinion." *Id*. That is, "Tressel never explained just how his own experience, or the texts he mentioned, supported his 'expectancy' opinion." *Id*. An "unclear, imprecise and ill-defined" "intrinsically probabalistic or quantitative idea," or one based upon an unstated basis or foundation—lacking e.g. a foundation of "reliable studies or based on some quantification derived from his own experience"—is insufficiently reliable to be admissible under Rule 702. *Id.*

Here, as in *Frazier*, we have an individual with police training, Mr. Burns, offered as an expert, with part of the substance of his testimony an intrinsically probabalistic or quantitiative idea. And, as in *Frazier*, Mr. Burns' opinion that the "contagion effect" is "common" and that "[i]f not dealt with the possibility to [incite] others in detention in this immediate area is high"

MOTION TO EXCLUDE TESTIMONY – Page 6 of 7

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006

is an unclear, imprecise, and ill-defined probability. Moreover, as in *Frazier*, Mr. Burns provided no basis—other than perhaps his personal, anecdotal experience of having "observed uncooperative and physical confrontational prisoners in a booking setting cause other prisoners to also mimic the behavior that they observe if not addressed in a timely and efficient manner"—to form a foundation for his opinion regarding the "contagion effect."

Therefore, Mr. Burns' should not be permitted to opine about the "contagion effect" in general or how it applies to this case in particular, because Mr. Burns' testimony on that subject is not sufficiently reliable to pass muster under Federal Rule of Evidence 702 and *Daubert*.

## IV. CONCLUSION

Because defense expert Tom Burns' expected testimony regarding the "contagion effect" is not the product of reliable principles and methods, that testimony should be excluded pursuant to this court's gatekeeping function under *Daubert* and Federal Rule of Evidence 702.

DATED this 10th day of June, 2012.

    /s/ Christopher Taylor
Christopher Taylor
Attorney for Plaintiff
Washington State Bar Association # 38413
email: taylor@ftlawps.com

## CERTIFICATE OF SERVICE

I certify that on June 12, 2012, I electronically filed the foregoing PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY, with attachments, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Michelle Luna-Green, Attorney for Defendants: mluna@co.pierce.wa.us

    /s/ Christopher Taylor
Christopher Taylor

MOTION TO EXCLUDE TESTIMONY – Page 7 of 7

FT Law, P.S.
404 Legion Way SE Ste 100
Olympia, WA 98501
Voice: (360) 352-8004
Fax: (360) 570-1006