HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NEIDINGER, KRISTINE M.,

    Plaintiff,

v.

COUNTY OF PIERCE, et al.,

    Defendants.

CASE NO. 3:10-cv-5702-RBL

ORDER

THIS MATTER is before the Court on the following motions: Defendant's Motion for Summary Judgment (Dkt. # 28), and Plaintiffs' Motions to Amend (Dkt. # 35) and Exclude Testimony (Dkt. # 38), which were filed in part to address the deficiencies claimed in the Motion for Summary Judgment. For the reasons below, Defendant's Motion is DENIED.

**I. BACKGROUND**

In 2008, Tacoma police arrested Plaintiff Neidinger for misdemeanor malicious mischief and brought her to the Pierce County jail for booking. In booking, Ms. Neidinger shouted profanities at the officers and was generally uncooperative. The officers placed Neidinger in a single-occupancy cell without handcuffs to calm down. Neidinger alleges that she had stress-related stomach pains, and began to bang on the cell door and demand that the officers bring her

1   ulcer medicine and Zoloft to help calm her nerves.  Ignoring the officers' several requests to

2   stop, Neidinger continued to bang her cell door and demand her medication.  After Defendant

3   Malidore allegedly told Neidinger that he could keep her in the cell as long as he wanted to,

4   Neidinger pulled down her pants, revealing her buttocks to Sergeant Malidore.

5          Neidinger claims to have stopped banging on the door after Malidore told her that if her

6   behavior continued, she would be restrained and possibly tased.  Defendants assert that

7   Neidinger continued to bang on the cell door.  The parties' descriptions of what happened next

8   are significantly different.

9          According to Defendants, Malidore feared that Neidinger may injure herself, and decided

10  to enter the cell to restrain Neidinger.  Malidor had Defendant Deputy Earp open the cell door.

11  As Malidore entered the cell, he asked Neidinger to step back toward the wall. Neidinger refused

12  to back away from the door, even after Malidore displayed his taser.  Malidore stated that

13  Neidinger's body language indicated that she would continue to refuse orders, and he determined

14  that deploying a contact tase would be the safest way to detain Neidinger.  As Malidore deployed

15  the taser, Neidinger began slapping towards Malidore and dislodged the taser from her body.

16  The sergeant reapplied the taser, but Ms. Neidinger continued to resist.  Malidore then deployed

17  a final five-second tase to Neidinger's shoulder to force her to the ground.  Neidinger continued

18  to resist as other officers entered the cell and placed her in arm and leg restraints.  The officers

19  left Neidinger in the cell, and checked on her every thirty minutes.

20          According to Neidinger, she complied with the sergeant's orders to move away from the

21  door.  Malidore entered the cell and without verbal warning immediately deployed his taser on

22  her chest.  Defendants Earp, Williams, and MacArthur entered the cell.  One or more of the

23  Defendants grabbed Neidinger, turned her around toward the wall, and tased her on the back

24

1  shoulder several times.  One or more of the Defendants then pushed Neidinger to the floor face
2  first and held her on the ground as other officers restrained her.  After Neidinger was in arm and
3  leg restraints, Malidore grabbed her by the throat and started to choke her, pulled out some of her
4  hair, and hit her.  Malidor then used his taser on Neidinger's neck.  Neidinger claims she had a
5  near death experience, and lost consciousness.  When Neidinger regained consciousness, she was
6  in an extraordinary amount of pain, and covered in vomit and urine.  Neidinger remained in the
7  cell, along with the vomit and urine, for more than two hours.
8       Neidinger sued, alleging claims for violation of her Constitutional right to be free from
9  unreasonable and excessive force under the Fourth and Fourteenth Amendments, the right to be
10 free from cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments,
11 and the right to due process of law under the Fifth and Fourteenth Amendments.
12      Defendants seek summary judgment, arguing primarily that use of a taser in "drive stun
13 mode" does not constitute excessive force when used on a combative arrestee.  Defendants
14 maintain that even if the use of a taser was excessive, the officers are entitled to qualified
15 immunity because there was no Supreme Court precedent at the time holding that using a taser
16 against a combative arrestee constituted excessive force.  Defendants also assert that the officers
17 did not unlawfully restrain Niedinger; that the prison officials were not deliberately indifferent to
18 Neidinger's medical needs; that there is no evidence indicating that Defendants Earp, Williams,
19 and MacCarthur had any knowledge of Malidore's alleged excessive force; and that all claims
20 against Pierce County should be dismissed because there is no evidence that a policy or custom
21 of Pierce County resulted in a deprivation of Neidinger's rights.
22      While Defendants' Motion was pending, Neidinger filed a Motion to Amend and a
23 Motion to Exclude Testimony.  Neidinger's proposed amended complaint attempts to clarify the
24

specific constitutional rights at issue, and removes Pierce County as named party (apparently because she has abandoned any *Monell* claim against it). The amended complaint includes claims only for excessive force. Defendants ask the Court to put aside Neidinger's Motion to Amend until it has ruled on their Motion for Summary Judgment.

## II. DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of establishing that there is "no genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, the moving party is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To survive a motion for summary judgment, the non-moving party cannot rely merely on the unsupported allegations of the complaint, and must present more than a mere "scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**A. Qualified Immunity**

Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The purpose of the doctrine is to "protect officers from the sometimes 'hazy border' between excessive and acceptable force." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Qualified immunity protects officers not just from liability, but from suit: "it is effectively lost if a case is erroneously permitted to go to trial," and thus, the claim should be resolved "at the earliest possible stage in litigation." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). The Supreme Court has endorsed a two-

part test to resolve claims of qualified immunity: a court must decided (1) whether the facts that a plaintiff has alleged "make out a violation of a constitutional right," and (2) whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).[1]  The Court addresses each question in turn.

1. <u>There is Conflicting Evidence About Whether Defendants Violated Ms. Neidinger's Constitutional Rights.</u>

Defendants assert that the use of a taser in "drive stun mode" with a combative arrestee in booking does not constitute excessive force.  The reasonableness of force is determined by "carefully balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (citing *Graham*, 490 U.S. at 396).  Courts assess the "quantum of force used to arrest" by considering "the type and amount of force inflicted." *Id.* at 1279–80.  A court assesses the governmental interests by considering a range of factors, including "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, whether he was actively resisting arrest or attempting to evade arrest by flight," or any other "exigent circumstances." *Id.*

A court must judge reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  Courts must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*  And, although the question is "highly fact-specific," the inquiry is objective: a court must ask "whether the officers' actions are 'objectively reasonable' in light of

---

[1] In *Pearson*, the Supreme Court reversed its previous mandate from *Saucier* requiring district courts to decide each question in order.  Although not mandated here, the Court will address both issues.

1  the facts and circumstances confronting them." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 383

2  (2007); *Graham*, 490 U.S. at 397). Since the excessive force inquiry "nearly always requires a

3  jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary

4  judgment . . . in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394

5  F.3d 689, 701 (9th Cir. 2005) (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir.2002)).

6      Ms. Neidinger alleges that she complied with Malidore's requests to step back from the

7  door, and that despite her compliance, Malidore repeatedly tased her, pushed her to the floor, and

8  choked her. Although Neidinger's yelling and banging may have been irritating, her conduct

9  posed no threat to any person around her, and the amount of force Defendants allegedly used was

10 unreasonable. Neidinger was locked in single-occupancy cell and posed no threat to the officers,

11 jail staff, other inmates, or herself. Viewed in the light most favorable to Neidinger, a reasonable

12 jury could conclude that Malidore and the individual Defendants violated Ms. Neidinger's

13 Fourth Amendment rights.

    2. <u>A Question of Fact Exists About Whether Defendants Violated a "Clearly Established" Right.</u>

    For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court has stated that "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004).

    Defendants argue that because there was no clearly established law regarding the use of a taser in "drive stun mode" that would give the officers notice that their actions were unconstitutional, Defendants are entitled to qualified immunity. However, Neidinger claims that

the officers not only tased her, but also choked and hit her, even after she was in arm and leg restraints. Neidinger claims she was compliant and not resisting. The officers had clear notice that hitting, choking, and even tasing in stun mode a compliant, restrained arrestee is excessive and unlawful. *See Cabral v. County of Glenn*, 624 F. Supp. 2d 1184, 1192, 2009 WL 737037 (E.D. Cal. 2009). (quoting *Kaady v. City of Sandy*, 2008 WL 5111101, *19 (D.Or.2008) (holding that police officers had reasonable notice that they may not use a taser against an individual suspect who does not pose a threat and has merely failed to comply with commands)).

Accordingly, Neidinger has adequately alleged a constitutional violation. Moreover, construing the facts in the light most favorable to Neidinger, it would have been clear to a reasonable officer that such conduct as alleged was unlawful. Consequently, it cannot be said as a matter of law that the officers are entitled to qualified immunity. Defendants' Motion for Summary Judgment is DENIED.

Defendants request that the Court accept the amended complaint if the Court denies Defendant's Motion for Summary Judgment. Neidinger's Motion to Amend is therefore GRANTED.

**B. Motion to Exclude Testimony**

Neidinger asserts that defense expert Tom Burns' expected testimony regarding the "contagion effect"[2] is not the product of reliable principles and methods, and should be excluded under Federal Rule of Evidence 702. Neidinger raises this issue in response to Defendant's Motion for Summary Judgment. Because Defendant's Motion is denied, the Court will reserve

---

[2] According to Burns, the "Contagion effect" occurs when one person's behavior incites similar behavior from others nearby who would not normally act out in such a manner. He uses examples such as the WTO riots in Seattle and the recent sports riots in Vancouver, BC. Burns claims that in law enforcement and in correctional settings, the contagion effect can occur in situations ranging from bar fights to a full blown riot in a correctional lunch room." Pl.'s Mot. to Exclude Testimony at 1–2.

1 ruling on admitting this evidence until trial, when the testimony and foundation is developed..

2 Neidinger's Motion to Exclude Testimony is therefore DENIED.

3     IT IS SO ORDERED.

4     Dated this 24th day of July, 2012.

*[signature: Ronald B. Leighton]*

Ronald B. Leighton
United States District Judge