UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KRISTINE M. NEIDINGER, | CASE NO. C10-5702 KLS |
| Plaintiff, | |
| v. | ORDER GRANTING DISMISSAL WITH PREJUDICE AND DENYING REQUEST FOR AN AWARD OF EXPERT WITNESS FEES |
| ELIZABETH WYATT EARP; RICHARD D. MALIDORE and LOIS K. MALIDORE and the marital community thereof; and JAMES PATRICK WILLIAMS and REBEKAH JILL WILLIAMS and the marital community thereof, | |
| Defendant. | |

This matter comes before the Court upon the request of the undersigned for briefing as to whether the Court's dismissal of the Plaintiff's case should be with or without prejudice. In her Response, the Plaintiff seeks relief from the Court's dismissal order pursuant to Fed. R. Civ. P. 60(b)(1) based on mistake, inadvertence, surprise, or excusable neglect.

Order                                                                 1

**FACTS**

The Plaintiff filed her § 1983 claim in federal court on September 18, 2010 in which she alleged excessive force against the defendants who are corrections officers with the Pierce County Detention Center in Tacoma, Washington.  The case was assigned to District Judge Ronald Leighton.  On January 18, 2011 Judge Leighton scheduled trial in this matter as a four day jury trial to commence on January 23, 2012.  That trial date was continued at the request of the parties to September 24, 2012.  At a pre-trial conference with counsel on September 14, 2012 Judge Leighton advised counsel that the case would have to trail other trials due to the congestion on his court calendar.  Subsequently, on September 27, 2012 the trial was rescheduled for January 14, 2013.  However, due to continued calendar congestion and based on the parties consent, the matter was reassigned to the undersigned on January 8, 2013.  On January 10, 2013 trial was scheduled for February 20, 2013.  A second pre-trial conference was held on February 12, 2013 at which time the undersigned advised counsel that trial would start on February 20, 2013 at 9:00 a.m.  Trial hours were to be from 9:00 a.m. to noon and 1:00 to 4:00 each day.

On February 20, 2013 everyone involved in this litigation was present in court except for the plaintiff.  Around 9:30 a.m. the Court was advised that the plaintiff was having car problems and was going to be delayed.  The trial finally started at 10:50 a.m.  The jury was selected, preliminary instructions were read to the jury, counsel made opening statements and the Plaintiff began her direct testimony at 3:10 p.m.  Ms. Neidinger became upset while testifying and stated that she just wanted to go home.  In light of her apparent state, the Court called an early recess at 3:55 p.m.  The undersigned told Ms. Neidinger that she had to be present in court each day no later than 8:50 a.m.   She appeared to acknowledge and understand that obligation.

Order                                                                 2

1    On the second day of trial Ms. Neidinger was not present at 8:50 a.m. nor was she present

2    by 9:00 a.m.  All others involved in the trial were present, to include the jury, three of the named

3    defendants, all counsel and an expert witness who was scheduled to testify on behalf of the

4    Defendants.  The Court was advised that Ms. Neidinger had earlier called jury administration and

5    was upset with the jury, the defendants and her attorney.  At 9:10 a.m. Ms. Neidinger called the

6    Court but her call was transferred so she could speak with her attorney in private.  Following that

7    conversation, the Court reconvened at 9:25 a.m.  At that time Mr. Taylor advised the Court that

8    he thought he had been fired but that was not clear and he also was not certain regarding Ms.

9    Neidinger's plans on attending trial.  When he tried to call her back to clarify she did not pick up

10    the phone.  Based on that, Mr. Taylor requested a mistrial.  The undersigned denied that request.

11    The Defendants then moved to dismiss the case for lack of prosecution and that the dismissal be

12    with prejudice.  The undersigned granted the motion to dismiss but requested briefing as to

13    whether the dismissal should be with or without prejudice.  A briefing schedule was set with the

14    Court's stated hope that this would allow Mr. Taylor sufficient time to determine his status in

15    relation to his client.  In addition, the Court requested briefing regarding the expert costs being

16    requested by the Defendants.

17    According to Ms. Neidinger's Declaration (ECF NO. 92) she arrived at the courthouse at

18    10:17 a.m. on the second day of trial.  The Court also notes that on February 20, Ms. Neidinger

19    contacted her attorney around 8:03 a.m., by phone and email, advising him that she was having

20    transportation problems.  She made no such similar effort to advise him of her situation on the

21    morning of February 21st.

22

23

24
Order                    3

**PLAINTIFF'S MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 60(b)(1)**

The Plaintiff is requesting relief from the Order of Dismissal pursuant to Fed. R. Civ. P. 60(b)(1).  While it is not clear, the undersigned assumes that the basis for the motion is that Ms. Neidinger's failure to appear was due to mistake, inadvertence or excusable neglect as she, according to her Declaration, made reasonable efforts to get to Court for trial.

**DISMISSAL FOR FAILURE TO PROSECUTE**

A judge is required to weigh several factors in determining whether to dismiss a case for lack of prosecution.  *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir. 1986).  These factors include:  "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions."  *Id.*  There must also be a showing of unreasonable delay. *Id.*

"Dismissal with prejudice . . . for willful and inexcusable failure to prosecute, are proper exercise of discretion under Federal Rules of Civil Procedure 41(b) . . . and the inherent power of the court."  *Al-Torki v. Kaempen,* 78 F.3d 1381, 1385 (9th Cir. 1996).  As noted in *Al-Torki*, "the culpability of a willful failure to appear for trial, and the prejudice to the side which does appear for trial, as well as the interference with the court's docket, may be held by the district court to outweigh those factors."  *Id.* at p. 1385.

With regard to the *Henderson* factors, the first factor supports a dismissal with prejudice as the public does have an interest in expeditious resolution of litigation.  This case was filed two one-half years ago, had four different trial dates set and had two judges.  With regard to the Court's docket, the second factor, "[f]ailure to appear for trial, without excuse, prejudices an adversary and interferes with the court's docket about as much as any procedural default can."

1   *Id.* at p. 1385.  Clearly the Court needs to manage its docket as the original trial judge is

2   extremely busy as is the undersigned.  With regard to the risk of prejudice to the Defendants, the

3   Declaration of Chief Martha Karr clearly shows the prejudice to the defendants.  With regard to

4   the fourth factor, the undersigned assumes that Ms. Neidinger's case had merit as the claim for

5   excessive force survived the Defendants' summary judgment motion.

6          The fifth factor is the availability of less drastic sanctions.  That factor, in this case, is fact

7   driven and does not weigh in favor of Ms. Neidinger.  The Court was in the middle of trial with

8   the plaintiff's direct testimony having commenced, jurors had been selected, everyone was

9   present in court except for the plaintiff, and her own attorney did not know if he had or had not

10  been fired.  When he tried to clarify that status his client did not answer his call.  In addition, on

11  the morning of February 21st Ms. Neidinger made no effort to contact her attorney and explain

12  her circumstances as she had done the previous day.  She only ended up speaking with her

13  attorney when she called the Court and her call was redirected to her counsel.  Mr. Taylor was

14  clearly at a loss as to the intentions of his client and could not provide the court with any clarity

15  as to whether she was planning on attending trial.  As previously noted, Ms. Neidinger's direct

16  testimony had just started and was not concluded when she left the stand on the first day of trial.

17         It would not have been fair to require the jury, the expert witness, counsel, defendants

18  and the Court to wait to see if Ms. Neidinger was or was not going to show up for Court.  The

19  trial day was scheduled based on the Court's order and not on the vagaries of the Plaintiff.

20  Based on her voiced dissatisfaction with her attorney, the jury and the defendants, her failure to

21  communicate with her attorney, and Mr. Taylor's uncertain status, the Court was left with only

22  one option and that was to grant the Defendants' motion to dismiss for failure to prosecute.

23

24  Order                                        5

1    While Ms. Neidinger does relate in her declaration that she had transportation problems,

2 she does not address the issues she created with her attorney nor does she explain why she failed

3 to contact him prior to 9:00 a.m. to explain her situation regarding transportation, as she had

4 done the previous day.  The Court concludes that her transportation issues are insufficient to

5 overcome the other issues she created and do not support relief from the order of dismissal.

6    Further, pursuant to Fed. R. Civ. P. 41(b), the Court also concludes that, under the

7 circumstances as described above, the dismissal should be with prejudice.

8    **DEFENDANT'S REQUEST FOR AWARD OF EXPERT WITNESS FEES**

9    The Defendants also seek reimbursement of expert witness fees.  The Court was made

10 aware of the fact that an expert witness, to be called by the defense, was present in court on

11 Tuesday, February 21st when the case was dismissed.  Counsel stated she would be requesting

12 reimbursement of fees associated with their witness being present and ready to testify.  The

13 Court requested briefing in that regard.  According to the documents filed by the Defendants,

14 their expert, Christian M. Sloane, incurred costs in the sum of $4,472.96.

15    As the Defendants noted, reimbursement of expert witness fees is governed by the

16 general cost statute, 28 U.S.C. § 1920, and is limited by 28 U.S.C. § 1821(b) governing witness

17 attendance fees.  The Defendants are not seeking reimbursement for their expert witness

18 expenses under the statute.  They do point out, however, that the Court does have the inherent

19 power to impose an award of reasonable expert witness fees as a sanction when a party has

20 "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Amsted Industries Inc. v.*

21 *Buckeye Steel Castings Co.,* 23 F.3d 374, 378 (Fed. Cir. 1994).

22    The Supreme Court has recognized three exceptions to the "American Rule" against

23 shifting fees to the losing party.  *Chambers v. NASCO, inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115

24

Order                                                      6

1    L.Ed.2d 27 (1991).  The first exception, known as the "common fund exception" is not

2    applicable to this matter before the Court.  The second exception is available for willful

3    disobedience of a court order.  This Court has not made a finding of willful disobedience of a

4    court order.  The third exception arises when a party has acted in bad faith, vexatiously,

5    wantonly, or for oppressive reasons.

6        The Supreme Court emphasized in *Chambers* that "a court must, of course, exercise

7    caution in invoking its inherent power" to impose sanctions.  *Id.* 501 U.S. at 50, 111 S.Ct. at

8    2136.  In particular, when statutes or rules provide adequate sanctions for bad faith, a trial court

9    should ordinarily rely on those express authorities for sanctions.

10        While the Court finds Ms. Neidinger's actions on February 21, 2013 unacceptable for all

11   the reasons discussed above, the Court also believes that the sanction of dismissal with prejudice,

12   as allowed by the court rule, is more than a sufficient sanction for her conduct.  At the most, her

13   actions should be characterized as negligent – for purposes of this sanctions analysis – and not

14   that of bad faith.  Certainly her actions were vexing and in complete disregard for everyone else

15   who appeared in court on time but they do not rise to the level of such deliberative acts that

16   additional sanctions should be imposed.  The Defendants request for an award of expert witness

17   expenses is therefore DENIED.

18        DATED this 15th day of March, 2013.

19

20

21                                    Karen L. Strombom
                                      United States Magistrate Judge

22

23

24   Order                          7